UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                          :

BRYAN ABREU,                              :

                  Plaintiff,       :

                              :         23-CV-03814 (JAV)

      -v-                    :

                              :        <u>OPINION AND ORDER</u>

THE CITY OF NEW YORK ET AL.,       :

                              :

                Defendants.     :

                              :
-------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Bryan Abreu brings this suit under 42 U.S.C. § 1983, alleging that two "John Doe" New York City Police Department ("NYPD") officers (collectively, the "John Doe Officers") violated his constitutional rights by stopping a public bus to demand his identification onboard. Before this Court is a motion to dismiss the claims brought against the City of New York, the NYPD, and New York Police Commissioner Dermot Shea (collectively, "the City Defendants"). For the reasons set forth below, the City Defendants' motion to dismiss is GRANTED.

## BACKGROUND

### A.    Allegations

The following facts are accepted as true and construed in the light most favorable to the Plaintiff for the purposes of this motion. *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025) (citation omitted).

On May 7, 2020, around 6 PM, Plaintiff caught the M11 bus at 102nd Street in Manhattan after dropping his daughter off with her mother. ECF No. 39-1

("Amended Complaint" or "Am. Compl.")., ¶¶ 12-14.  As the bus pulled away from the curb, a black minivan sped in front of the bus and cut it off.  *Id.*, ¶ 16.  Two men leapt out of the minivan and banged on the front window of the bus demanding to be allowed to board.  *Id.*, ¶ 17.  The men "did not identify themselves as police officers" and "were not wearing police uniforms or badges."  *Id.* ¶¶ 17, 20.  When the bus driver opened the doors, the men boarded the bus and "charged toward Plaintiff in an unduly hostile and aggressive manner."  *Id.*, ¶¶ 18-19.  Approaching Plaintiff, John Doe 1 said to Plaintiff, "Do us both a favor and give me your [expletive] I.D. right now."  *Id.*, ¶ 21.  When Plaintiff asked John Doe 1 to identify himself, John Doe 1 shouted at him to "give me your [expletive] I.D."  *Id.*, ¶ 23.  Plaintiff declined, at which point John Doe 1 told Plaintiff to "slip your [expletive] facemask off."  *Id.*, ¶¶ 24-25.  When Plaintiff complied, the men left the bus.  *Id.*, ¶ 26.

That same day, Plaintiff filed a complaint with the Civilian Complaint Review Board ("CCRB").  *Id.*, ¶ 28.  Weeks later, Plaintiff was notified that a portion of his complaint to the CCRB would be referred to the NYPD's Internal Affairs Bureau ("IAB"), which has jurisdiction over complaints involving corruption and allegations of criminal conduct by officers.  *Id.*, ¶ 29.  The IAB investigation identified the vehicle that stopped Plaintiff's bus as belonging to the NYPD's Detective Bureau Warrant Squad.  *Id.*, ¶¶ 30-32.  Plaintiff alleges that he, a 6'5" tall African American man, was mistaken by the John Doe Officers for a "target of a criminal investigation" who had "significantly different stature than Plaintiff" and

"was wearing a mask and hoodie at the time that he was seized." Am. Compl., ¶¶ 13, 34.

**B.      Procedural History**

On May 6, 2023, Plaintiff filed this suit against the City Defendants and the two "John Doe" police officers in both their individual and official capacities. ECF No. 1 ("Compl." or "Complaint"). Plaintiff asserted a claim against the unnamed officers for violations of his Fourth Amendment right to be free from unreasonable search and seizure pursuant to Section 1983. *Id.*, ¶¶ 25-33. Plaintiff additionally asserted a *Monell* claim for municipal liability against the City Defendants. *See id.*, ¶¶ 34-45.

On July 29, 2024, the City Defendants, through Corporation Counsel, moved to dismiss the Complaint for failure to state a claim. ECF No. 33 at 1-2. Although the John Doe Officers have not been named or served, and Corporation Counsel has not appeared in this case on their behalf, the motion to dismiss nonetheless argued that the claims asserted against the John Doe Officers in their individual capacities should likewise be dismissed on qualified immunity grounds. ECF No. 33-1 at 9-10.

On October 23, 2024, Plaintiff filed an opposition to the motion to dismiss, ECF No. 39 ("Opp'n Br."), to which he appended a proposed Amended Complaint. ECF No. 39-1. The Amended Complaint includes additional factual details not contained in the initial Complaint, and adds an equal protection claim against the John Doe Officers, alleging that he was the victim of racial profiling. *Compare* Compl., ¶¶ 11-45, *with* Am. Compl., ¶¶ 11-62. Plaintiff contends the motion to

dismiss should be denied or, in the alternative, he should be granted leave to file

the Amended Complaint.  Opp'n Br. at 1.[1]  The City Defendants argue in their reply

papers that leave to amend should be denied on futility grounds.  ECF No. 43

("Reply").

Although Plaintiff has counsel, he has yet to seek pre-conference discovery

pursuant to Rule 26(d)(1) in order to ascertain the identity of the John Doe Officers.

*See, e.g.*, *Colds v. Smyth*, No. 22-CV-2023 (CS), 2023 WL 6258544, at *4, *9

(S.D.N.Y. Sept. 26, 2023).

## LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

the court accepts as true all well-pleaded allegations and draws all reasonable

inferences in favor of the non-moving party.  *Romanova v. Amilus Inc*, 138 F.4th

104, 108 (2d Cir. 2025).  To survive a motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir.

2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, . . . [the standard] requires more than labels[,] conclusions, and a

formulaic recitation of a cause of action's elements."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 545 (2007).  "The Court's charge in ruling on a Rule 12(b)(6) motion 'is

---

[1] At the time Plaintiff filed his proposed Amended Complaint, the 21-day period to amend his Complaint as of right pursuant to Rule 15(a)(1)(B) had elapsed.

merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

## DISCUSSION

As an initial matter, the Court analyzes the facts as set forth in Plaintiff's proposed amended pleading. *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303- (2d Cir. 2020) ("When faced with an amended complaint, [a District Court] may either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading" in order to "promote[] judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient." (citations omitted)).  Whether considering the initial Complaint or the Amended Complaint, however, the result remains unchanged.  Plaintiff has failed to allege facts sufficient to establish a *Monell* claim against the City Defendants.

Section 1983 "creates a private right of action" for damages against "every person who acts under color of state law to deprive another of" the "rights, privileges, or immunities secured by the Constitution and laws of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (cleaned up).  Section 1983 requires that "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or

laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted).

The Supreme Court has established that "in order to have recourse against a municipality or other local government under section 1983, plaintiffs must prove that action pursuant to official municipal policy caused the alleged constitutional injury." *Floyd v. City of New York*, 959 F. Supp. 2d 540, 563 (S.D.N.Y. 2013) (cleaned up) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). Accordingly, in the Second Circuit, a plaintiff bringing a *Monell* claim against a municipality must establish: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted). A plaintiff satisfies the first element by showing one of the following:

(1)     the defendant participated directly in the alleged constitutional violation,

(2)     the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,

(3)     the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,

(4)     the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or

(5)     the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (citation omitted). The underlying constitutional violation must be separately proven.

Plaintiff alleges that the John Doe Officers violated his right to be free of unreasonable searches and seizures and his equal protection rights. But "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. *Monell* liability requires both that an employee acts under color of law when committing the constitutional violation *and* a plausible allegation that the plaintiffs' constitutional rights were deprived as the result of an "official policy or custom of the City." *Albert v. City of New York*, No. 17-CV-3957 (ARR) (SMG), 17-CV-04315 (ARR) (SMG), 2018 WL 5084824, at *4 (E.D.N.Y. Oct. 18, 2018).

Regardless of whether Plaintiff plausibly alleges a Fourth Amendment violation by the John Doe Officers, he does not plausibly plead an "official policy or custom" from which the violation stemmed. *Wray*, 490 F.3d at 195. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted).

Although line officers' acts "can be the basis of liability [for a *Monell* claim] if they were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisors must have been aware," "isolated acts by non-policymaking municipal employees are generally not sufficient

7

to demonstrate a municipal custom, policy, or usage that would justify liability." *Hu v. City of New York*, 927 F.3d 81, 106 (2d Cir. 2019) (cleaned up).

To sustain his claims against the City Defendants, Abreu must show that "the alleged practice was so manifest as to imply the constructive acquiescence of senior policymaking officials." *Id.* (cleaned up). His Amended Complaint, however, does not even identify the purported policy, practice, or custom at issue, the decision-maker who allegedly adopted any such policy, or any facts from which it can be inferred that any alleged practice was widespread. Instead, the Amended Complaint vaguely alleges that the John Doe Officers "were acting pursuant to the policies, practices and customs developed and implemented by Defendants City of New York, New York City Police Department and Shea," Am. Compl., ¶ 58, and that the "violations of Plaintiff's civil and constitutional rights resulted directly from the policies, practices, customs, usages and climate created and promulgated by the Defendants City of New York, New York City Police Department and Shea," *id.*, ¶ 60. In other words, it merely uses "boilerplate language echoing the requirements contained in *Monell.*" *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015).[2] Such a "formulaic recitation of a cause of action's elements" does not meet the pleading requirements under Section 1983. *Twombly*, 550 U.S. at 545.

---

[2] Plaintiff alleges that "Defendant Shea . . . had the obligation to create and implement policies, practices[,] and customs that would prevent or deter the use of excessive force by New York City police officers," but does not allege facts supporting a claim of excessive force. Am. Compl., ¶ 57.

8

Plaintiff does allege that the City Defendants failed to properly train its officers "concerning the rights of citizens thereby causing and enabling the Defendant Police Officers to engage in the aforementioned conduct." Am. Compl., ¶ 55. "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. Here, too, however, Plaintiff's pleading consists of nothing more than a boilerplate recitation of the legal standard. Plaintiff has not "provid[ed] any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train," as is necessary to establish a plausible claim for relief under the *Iqbal* standard. *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012).

With respect to Plaintiff's claims against Commissioner Shea, Section 1983 does not permit *respondeat superior* liability. *E.g.*, *Iqbal*, 556 U.S. at 676. Accordingly, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (cleaned up); *see Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023) ("To establish a Section 1983 violation, a plaintiff must plead (and later prove) that each defendant was personally involved in the alleged constitutional violation." (citation omitted)). It is insufficient to show that a defendant simply supervised the state actor who

9

allegedly committed the constitutional violation. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, to attach "supervisory liability" under Section 1983, "a plaintiff must show the defendant's personal involvement in the alleged constitutional violations." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citation omitted). As no such personal involvement in the constitutional violation by Commissioner Shea has been pled, any claims asserted against him in his individual capacity are likewise dismissed.

## CONCLUSION

Accordingly, the City Defendants' motion to dismiss is GRANTED. Within two weeks of the date of this Opinion and Order, Plaintiff shall file a status letter with the Court regarding his proposed next steps with respect to this litigation, including how he intends to proceed with respect to the John Doe Officers.

The Clerk of Court is directed to terminate ECF No. 33.

SO ORDERED.

Dated: January 9, 2026
      New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge

10